# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **KYOTOCOOLING NORTH AMERICA, LLC** and **AIR ENTERPRISES ACQUISITION LLC,**<br><br>　　　　**Plaintiffs,**<br><br>　　v.<br><br>**NORTEK AIR SOLUTIONS, LLC, and NORTEK, INC.**<br><br>　　　　**Defendants.** | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiffs KyotoCooling North America, LLC ("KyotoCooling") and Air Enterprises Acquisition LLC ("Air Enterprises") file this Original Complaint against Nortek, Inc. and Nortek Air Solutions, LLC (collectively, "Nortek") and allege as follows:

## THE PARTIES

1. Plaintiff KyotoCooling North America, LLC ("KyotoCooling") is a Delaware limited liability company with its principal place of business at 2651 N. Harwood, Suite 360, Dallas, Texas 75201.

2. Plaintiff Air Enterprises Acquisition LLC ("Air Enterprises") is a Delaware limited liability company with its principal place of business at 735 Glaser Parkway, Akron, Ohio 44306.

3. Upon information and belief, Defendant Nortek, Inc. is a Delaware corporation with its principal place of business at 500 Exchange Street Providence, Rhode Island 02903. Nortek, Inc. designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cooling units and systems for use in

datacenters housing Information and Communication Technology ("ICT") and/or other telecommunications equipment. Nortek Inc.'s cooling units and systems are marketed, offered for sale, and/or sold throughout the United States, including within this District.

4. Upon information and belief, Defendant Nortek Air Solutions, LLC is a subsidiary of Nortek, Inc. and is a limited liability company organized and existing under the laws of the State of Delaware. Also upon information and belief, Nortek Air Solutions, LLC maintains its principal place of business at 13200 Pioneer Trail, Suite 150, Eden Prairie, Minnesota 55347. Nortek Air Solutions, LLC designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cooling units and systems for use in datacenters housing ICT equipment and/or other telecommunications equipment. Nortek Air Solutions LLC's cooling units and systems are marketed, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

5. This is an action arising under the patent laws of the United States, 35 U.S.C. § 271. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and/or 1338.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

7. This Court has personal jurisdiction over Nortek, Inc. and Nortek Air Solutions, LLC (hereafter referred to collectively as "Nortek"). Nortek has conducted and does conduct business within the State of Texas, and Northern District of Texas. Nortek, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), offers for sale its products and/or services (including infringing products and/or services) in the United States, the State of Texas, and the Northern District of Texas.

Accordingly, Nortek has committed acts of patent infringement within the State of Texas and, more particularly, within this District.

### THE '766 PATENT

8. United States Patent No. 7,753,766 ("the '766 Patent"), titled "Apparatus and Method for Cooling a Space in a Data Center by Means of Recirculation Air," was duly and legally issued after full and fair examination to inventors Pedro Matser, Marcel van Dijk, Robbert Mees Lodder, and Wolter Schaap on July 13, 2010, and a copy of the '766 Patent is attached hereto as Exhibit A.

9. KyotoCooling owns by assignment the entire right, title, and interest in the '766 Patent.

10. In 2013, the '766 Patent was exclusively licensed to Air Enterprises. As a result, Air Enterprises has standing to participate in this lawsuit as a party plaintiff.

### FACTUAL BACKGROUND

11. KyotoCooling is a leader in the implementation of next generation cooling systems for the data center industry, providing a range of proven, scalable, reliable, and energy and resource efficient cooling solutions that can be implemented in various climates around the world. With hundreds of installations, KyotoCooling is the most experienced supplier of indirect cooling solutions in the data center industry.

12. Air Enterprises has spent more than fifty years providing highest-quality air handling applications. Today, Air Enterprises' applications are used by technology manufacturers, data centers, pharmaceutical and research laboratories, major medical facilities, museums and other customers across the globe.

13. Nortek recently began to compete against Air Enterprises using the cooling solution disclosed and claimed in the '766 Patent. In particular, Nortek bid against Air

Enterprises to supply the cooling solution for multiple data centers to be constructed by Equinix, a worldwide provider of data centers. Nortek offered its Indirect Evaporative Cooling ("IDEC") Unit for Datacenters, along with conventional refrigerant-based cooling equipment ("Nortek Cooling Equipment"), in a configuration that infringes the patent claims involved in this action.

## COUNT I.

## DIRECT INFRINGEMENT OF THE '766 PATENT

14. KyotoCooling and Air Enterprises repeat and reallege the allegations in paragraphs 1-14 as if fully set forth herein. As described below, Nortek has infringed and/or continues to infringe the '766 Patent.

15. Nortek's offer of the Nortek Cooling Equipment for use in U.S. data centers infringes at least claim 1 of the '766 Patent. Nortek's infringement is illustrated in its promotional materials, which are attached hereto as Exhibit B.

16. Nortek's promotional materials first establish that the sale and installation of the IDEC units create a humidity and temperature controlled space within a data center. *See* Ex. B. at 2 (copied in part below).





17. Nortek promotional and publicly-available technical materials, further establish that:

(a) Nortek's IDEC units contain a sensible heat exchange wheel constituting the IDEC units' primary cooling means;

(b) Nortek's IDEC units further contain a secondary cooling means comprising either (1) an evaporative cooler that operates in "evaporation mode" that cools the outdoor air stream before it encounters the heat exchange wheel; or alternatively (2) a refrigerant-based cooler that operates in "Evap + DX Mode" whereby refrigerant-based cooling is used to augment the cooling of the primary cooling means when the outside temperature exceeds a certain limit; and

(c) The Nortek Cooling Equipment has been offered in a configuration in which it would utilize only the primary cooling means unless an increase in air temperature requires the use of a secondary cooling means.

*See* Ex. 2 at 5, 10, 12 (copied in part below).

# COOL³ IDEC UNIT SAVINGS
## THROUGH THE SEASONS

The Nortek Air Solutions Cool³ IDEC Unit is an indirect evaporative cooling (IDEC) unit which sensibly and indirectly cools the data center air. The system minimizes the hours required to mechanically cool a data center because it operates in the economizer (winter) mode for more hours during the year (depending upon location) than its competitors due to having higher outdoor air dry-bulb (DB) limits. In addition, the outdoor air wet-bulb (WB) limit is very high and is slightly higher than the competition. These advantages result in significant water consumption savings and allow for a compact DX package size.

### ❄ WINTER — Economizer Mode



In this mode, the main outdoor air intakes are closed and the outdoor air enters the unit through the bypass dampers. The outdoor air bypasses the DEC, which extends the life of the DEC and reduces the pressure drop on the scavenger side of the unit. The sensible heat exchanger device carries 100% of the load by rejecting the heat from the data center air (process air) to the cold outdoor air. The scavenger airflow rate modulates based on the outdoor air conditions to minimize the unit's energy consumption in this mode.

### ☀ SUMMER — Evaporation Mode



In this mode, the bypass dampers are closed and the outdoor air enters the unit through the main outdoor air intakes. Firstly, the outdoor air (also called scavenger air) passes through the DEC where the scavenger air is cooled to its wet-bulb temperature. Then the cold scavenger air passes through the sensible heat exchanger device and will pick up the heat from the data center air. The scavenger airflow rate modulates based on the outdoor air conditions to minimize the unit's energy consumption in this mode.

### 🌡 EXTREME — Evap + DX Mode



When outdoor air is extremely hot and humid, the unit requires some mechanical cooling to bring the data center's air supply to its target temperature. Outdoor air passes through the DEC where the scavenger air is cooled to its wet-bulb temperature. It then passes through the sensible heat exchanger device where it absorbs some of the heat from the data center air. The DX cooling coil, which is in the process airstream and downstream of the sensible heat exchanger device, completes the cooling process and reduces the air temperature in the cold aisle supply to the need of the data center. The scavenger air fans run at their maximum speed in this mode.

18. Accordingly, Nortek has offered for sale within the United States an apparatus that directly infringes at least claim 1 of the '766 Patent, pursuant to 35 U.S.C. § 271(a).

19. Nortek's acts of infringement have caused damage and irreparable harm to KyotoCooling and Air Enterprises. KyotoCooling and Air Enterprises are entitled to recover from Nortek the damages sustained as a result of Nortek's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Nortek have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to KyotoCooling and Air Enterprises for which there is no adequate remedy at law, and for which KyotoCooling and Air Enterprises are entitled to injunctive relief under 35 U.S.C. § 283.

20. Nortek received actual notice of its infringement of the '766 Patent, at least by way of this Complaint.

21. Nortek also indirectly infringes the '766 Patent. Nortek has willfully contributed to and has induced direct infringement of the '766 Patent by offering the Nortek Cooling Equipment that, upon installation, will directly infringe the '766 Patent.

## COUNT II.

### INDUCED INFRINGEMENT OF THE '766 PATENT

22. KyotoCooling and Air Enterprises repeat and reallege the allegations in paragraphs 1-22 as if fully set forth herein. As described below, Nortek has induced and/or continues to induce infringement of the '766 Patent.

23. Nortek indirectly infringes at least claims 1 and 28 of the '766 Patent by inducing the direct infringement of others, including without limitation Equinix, in accordance with 35 U.S.C. § 271(b).

7

24. Nortek had actual notice of the '766 Patent, at least by way of this Complaint.

25. Nortek's affirmative acts of offering the Nortek Cooling Equipment will induce Equinix, through the normal and intended use of the Nortek Cooling Equipment, to infringe the '766 Patent. Accordingly, Nortek performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '766 Patent and with the specific intent, knowledge, or willful blindness that the induced acts would constitute infringement.

## COUNT III.

### CONTRIBUTORY INFRINGEMENT OF THE '766 PATENT

26. KyotoCooling and Air Enterprises repeat and reallege the allegations in paragraphs 1-26 as if fully set forth herein. As described below, Nortek has contributed to and/or continues to contribute to infringement of at least claim 1 of the '766 Patent, pursuant to 35 U.S.C. § 271(c), by virtue of its offer to sell within the United States acomponent of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, which are not staple articles or commodities of commerce and which have no substantial non-infringing use.

27. Nortek has offered for sale the Nortek Cooling Equipment which constitute a material part of the invention of the '766 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '766 Patent, and knowing that the same are not staple articles or commodities of commerce suitable for substantial non-infringing use.

28. In particular, Nortek's own materials establish that the Nortek Cooling Equipment:

(a) is especially made or especially adapted to operate as part of a data center;

(b) is required for the normal and customary operation of data centers; and

(c) comprises a material part of the invention of the '766 Patent and is especially made for infringing use in data centers.

29. Nortek had actual notice of the '766 Patent, at least by way of this Complaint.

30. Nortek's affirmative acts of offering for sale the Nortek Cooling Equipment contribute to infringement of the '766 Patent. Accordingly, Nortek performed the acts that constitute contributory infringement, and would result in actual direct infringement, with the knowledge of the '766 Patent and with the specific intent, knowledge, or willful blindness that its acts would constitute infringement.

31. Nortek has willfully infringed and/or does willfully contribute to the direct infringement of the '766 Patent.

32. Nortek's acts of infringement have caused damage to KyotoCooling and Air Enterprises. KyotoCooling and Air Enterprises are entitled to recover from Nortek the damages sustained as a result of Nortek's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Nortek have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to KyotoCooling and Air Enterprises for which there is no adequate remedy at law, and for which KyotoCooling and Air Enterprises are entitled to injunctive relief under 35 U.S.C. § 283.

## DEMAND FOR JURY TRIAL

KyotoCooling and Air Enterprises hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, KyotoCooling and Air Enterprises respectfully request that this Court enter judgment in its favor and grant the following relief:

A. Adjudge that Nortek infringes the '766 Patent;

B. Award KyotoCooling and Air Enterprises damages in an amount adequate to compensate KyotoCooling and Air Enterprises for Nortek's infringement of the '766 Patent;

C. Award enhanced damages pursuant to 35 U.S.C. § 284;

D. Award KyotoCooling and Air Enterprises pre-judgment and post-judgment interest to the full extent allowed under the law, as well as their costs;

E. Enter an order finding that this is an exceptional case and awarding KyotoCooling and Air Enterprises their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F. Enter a preliminary injunction, and following trial, a permanent injunction against Nortek enjoining further acts of infringement;

G. In the alternative award, in lieu of an injunction, a compulsory forward royalty;

H. Order an accounting of damages; and

I. Award such other relief as the Court may deem appropriate and just under the circumstances.

Dated: February 10, 2016

Respectfully submitted,

**MCKOOL SMITH, P.C.**

By: */s/ Theodore Stevenson, III*
Theodore Stevenson, III, Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Travis E. DeArman
Texas State Bar No. 24074117
tdearman@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS KYOTOCOOLING NORTH AMERICA, LLC AND AIR ENTERPRISES ACQUISITION LLC**